IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| ERIK VELAZQUEZ AYALA, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. G-08-067 |
| | § | |
| NATHANIEL QUARTERMAN, TEXAS | § | |
| DEPARTMENT OF CRIMINAL | § | |
| JUSTICE, CORRECTIONAL | § | |
| INSTITUTIONS  DIVISION, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM AND ORDER GRANTING
## RESPONDENT'S MOTION FOR SUMMARY JUDGMENT

Before the Court[1] in this proceeding brought pursuant to 28 U.S.C. § 2254 is Respondent's

Motion for Summary Judgment (Document No. 8) against Petitioner's Federal Application for Writ

of Habeas Corpus (Document No. 1).   Having considered the motion, the response in opposition

(Document No. 11), the claims raised by Petitioner in his § 2254 Application (Document No. 1), the

summary judgment evidence, and the applicable law, the Court ORDERS, for the reasons set forth

below, that Respondent's Motion for Summary Judgment (Document No. 8) is GRANTED,

Petitioner's Federal Application for Writ of Habeas Corpus (Document No. 1) is DENIED, and this

case is DISMISSED WITH PREJUDICE.


## I.      Introduction and Procedural History

Erik Velazquez Ayala ("Ayala") is currently incarcerated in the Texas Department of Criminal

---

[1] On July 7, 2008, pursuant to the parties'  consent, this case was transferred by the
District Judge to the undersigned Magistrate Judge for all further proceedings.  *See* Document No.
10.

Justice, Correctional Institutions Division, as a result of a 2005 murder conviction in the 23rd District Court of Brazoria County, Texas, Cause No. 46,364. Ayala was charged by indictment with that offense on March 4, 2004, was found guilty by a jury on July 1, 2005, and was sentenced to thirty-five (35) years incarceration. His conviction was affirmed on appeal on October 26, 2006. *Ayala v. State*, 01-05-00714-CR. Ayala's petition for discretionary review was refused on April 25, 2007.

On October 5, 2007, Ayala filed a state application for writ of habeas corpus. That application was denied by the Texas Court of Criminal Appeals on January 23, 2008, on the findings of the state trial court without a hearing. *Ex parte Ayala*, Application No. WR-68,790-01. This § 2254 proceeding, filed by Ayala on or about March 13, 2008, followed. Respondent has filed a Motion for Summary Judgment (Document No. 8), to which Ayala has filed a response in opposition (Document No. 11). This § 2254 proceeding is ripe for ruling.

## II.   **Factual Background**

The factual background, as set forth by the Texas Court of Appeals in its written opinion affirming Ayala's conviction is as follows:

> Ayala's brother, Morelos Ayala, testified that in February 2004, Ayala and Morelos repaired their parents' back patio. Afterward, they went to shoot pool. After playing pool, the brothers returned to their parents' house, and Martinez, the decedent, arrived ten minutes later. At about 8:00 p.m. or 8:30 p.m., Morelos went home to his wife and children. Ayala called Morelos around 11:00 p.m., 1:00 a.m., and 2:00 a.m. to ask whether he would come out drinking. Morelos heard Martinez' voice in the background the second time, and actually spoke on the phone with him during the third telephone call. Morelos told Ayala and Martinez that he did not wish to go. Morelos testified that it sounded as if the two men were in a bar, and that by the third phone call, the men sounded intoxicated. Around 3:30 a.m. or 4:00 a.m., Ayala knocked on Morelos's door and asked whether he could park his truck in Morelos's garage. Ayala wore a black jacket and blue jeans. Morelos removed his truck from the garage and allowed Ayala to park his truck in the garage. Ayala told Morelos that someone had shot "Javier" and thrown him in a ditch somewhere.

2

Morelos observed a red stain on Ayala's truck seat, and told Ayala to do what he needed to do and leave.  Ayala stated that he planned to clean his truck and leave.  When Ayala finished cleaning his truck, he told his brother not to tell anyone about the incident.

A couple of days later, Ayala asked Ray Camorena, his cousin, to accompany him to several bars in Houston to look for a cellular phone that he had lost.  Camorena testified that Ayala had procured a job for Martinez at San Jacinto Stone Company, and that Ayala and Martinez were good friends.

Six days after Martinez's disappearance, Pearland Police Officer John Albin discovered Martinez's body in a water-filled ditch on the side of the road.  Near the body, Albin also discovered a wallet with Martinez's identification, and a cellular phone that belonged to Ayala according to the serial number and T-Mobile phone records.  Crime Scene Investigator Ricky Bort testified that someone had hand-pulled grass and thrown it on top of the body in an attempt to obstruct a view of it.  Investigators also found a shoe print next to Martinez's body.  Bort ran no tests on Martinez's hands to determine whether he had fired a gun.  He testified that no attempts were made to remove fingerprints from the wallet and cellular phone recovered at the scene.

Four days after discovering Martinez's body, Detective Cecil Arnold and Rene Alvarado spoke with several of Ayala's family members.  Detective Alvarado testified that Ayala's father, Ramiro Ayala, told him Ayala had shot Martinez in self-defense.  Ramiro testified at trial, however, that he never discussed what happened to Martinez with Ayala, and that Ayala never told him he had shot Martinez in self-defense.  Catalina Ayala, Ayala's mother, testified that she did not have a conversation with Ayala in February or March 2004 regarding Martinez's death.  Specifically, Catalina testified that she did not tell Morelos that Ayala had told her he had shot Martinez in self-defense.  Morelos also testified that Ayala never told him that he had shot Martinez in self-defense.

Arnold testified, however, that when he spoke with Morelos in front of Ayala's parents' house, Morelos seemed anxious and looked repeatedly back towards the house.  Morelos told him that he recognized the phone discovered next to Martinez's body as Ayala's phone.

After obtaining a statement from Morelos, Arnold and Alvarado went to Alamo Stone Company to look for Ayala.  Arnold believed Ayala to drive a green Ford F-150 truck, and upon seeing one parked in front of Alamo Stone, Arnold confirmed with police dispatch that the vehicle was registered to Ayala.

Alvarado approached Ayala in the lunchroom of Alamo Stone.  Alvarado testified that he immediately placed Ayala under arrest.  Ayala did not seem nervous

3

and was very cooperative.  Arnold and Alvarado asked for consent to search Ayala's vehicle.  Alvarado explained the voluntary consent to search form to Ayala in English and Spanish.  Arnold testified that he spoke to Ayala in English, and Ayala appeared to understand what he said.  Ayala stood behind Arnold as he searched the vehicle. When Arnold opened the driver's side door, he observed a new cellular phone and cellular phone box, as well as a blanket covering the seat.  Arnold removed the blanket and observed what he believed to be a bloodstain on the seat.  Arnold called the District Attorney and based on that conversation seized Ayala's truck as evidence. Arnold testified that it was at this point that he arrested Ayala.

The investigators then took Ayala to his home.  Arnold asked Ayala what he wore the night of Martinez's murder, and Ayala told him a black leather jacket that Arnold discovered on the floor of Ayala's bedroom.  Arnold noticed a lot of mud on the lower part of the jacket, and what he believed to be a bloodstain on the right sleeve.  Arnold and Bort testified that no one conducted tests to determine if the mud discovered on Ayala's jacket matched the mud at the crime scene.  Arnold conceded that it would be possible for Ayala to get mud on his jacket at work because he worked at a stone company.  Arnold also discovered a black semiautomatic SIG Sauer handgun, a nine millimeter spent shell casing, two boxes of nine millimeter ammunition, and two bags of hollow point bullets.  Arnold testified that when he opened the handgun, which was a .40 caliber, the nine millimeter shell casing fell out of it.  Bort testified that ballistics determined that the gun recovered from Ayala's apartment was not the murder weapon.  Arnold also discovered plastic cellular phone packaging bearing the same model number as the cellular phone he had discovered next to Martinez's body, and several suitcases filled with clothes.

Police retained Ayala's vehicle at the police department until they obtained a search warrant, at which point Bort examined the truck.  Bort photographed a bloodstain in the middle of the bench seat and obtained samples from the stain.  Bort also obtained samples of blood spatter from the passenger's side door and from the floor around the gearshift.  He also removed the headliner, the visors, and the dome light assembly, all of which contained blood spatter.

At trial, Bort testified that he compared the shoe impression he had discovered next to Martinez's body with both Martinez's and Ayala's shoes.  Bort testified that he believed that the cast matched the shape and size of the shoes recovered from Ayala's apartment, but he admitted that he is not an expert in making such comparisons, and the cast was not sent to an expert because it was a poor sample.

Christy Smejkel, a criminalist for the Texas Department of Public Safety, determined that Martinez's DNA matched the blood found on Ayala's jacket, and on the seat and floor of his vehicle.  She determined that one of the bloodstains from the seat, and the stain from the floor of Ayala's truck, contained the DNA of multiple people, but that in both instances Martinez's DNA was present.

4

Dr. Steven Pustillnik, the medical examiner who performed the autopsy on Martinez's body, testified that the only external injury to Martinez was a bullet hole to the neck. He testified that the bullet entered through the soft tissue on the left side of the neck, striking the vertebral column and the base of the skull, and ending up next to the jaw on the right side of the head. Dr. Pustillnik recovered the bullet, which was a hollow point that had been filled with wax to ensure it would expand when it struck its target. He explained that stippling, or small abrasions on the skin caused by powder and other particles traveling with the bullet and striking the skin, occurs when a gunshot wound is inflicted from two inches to twenty-four inches away, which is considered an intermediate range wound. Marginal abrasions, or abrasions caused by the skin rubbing against the bullet, appear when a gunshot wound is inflicted from twenty-four inches away or more, which is called distance range. Dr. Pustillnik testified that he believed it was unlikely that Martinez shot himself because the gunshot likely came from two feet away or more.

Darrell Stein, the State's firearms expert, testified that Bort gave him a .40 caliber Smith & Wesson SIG arms pistol, a magazine, one spent cartridge case, and some unfired cartridges to analyze. Stein determined that the spent cartridge was not fired from the pistol. The cartridge was .38 caliber, consistent with a nine millimeter Luger, but could also have been fired from a .38 Special or a .357 Magnum. Some of the unfired cartridges discovered in Ayala's apartment were nine millimeter hollow point Luger bullets.

Morelos testified that Martinez, who was in his late forties, had made comments in the past that Ayala's seventeen-year-old sister was "hot" and "sexy," and that Martinez would "talk a whole bunch of stuff" when he was drunk. Martinez's comments would offend everyone, and people would tell him to stop saying those things. Morelos testified that Ayala had procured a job for Martinez at Alamo Stone Company, and that Martinez sometimes carried a semiautomatic gun. Morelos testified that he had seen Ayala with two guns, but not one on the night of Martinez's murder.

*Ayala v. State*, No. 01-05-00714 at 2-8.


III.  **Claims**

Ayala raises seven claims in his § 2254 application:

1.    That there is no evidence, or insufficient evidence, to support his conviction;


2.    That he was denied his Sixth and Fourteenth Amendment right to present a defense;

3.     That the trial court erred and abused its discretion in denying his motion for continuance;

4.     That the State and the prosecutor engaged in misconduct;

5.     That the trial court erred in denying his challenge to a venireperson for cause;

6.     That the trial court erred in refusing to quash the jury panel; and

7.     That his appellate counsel was ineffective.

Ayala raised his insufficient evidence claim and his claim that the trial court erred in denying his motion for continuance in his direct appeal   Both claims were rejected on the merits.  Ayala raised those same claims, as well as the remainder of the foregoing claims in his state application for writ of habeas corpus, which was denied by the Texas Court of Criminal Appeals on the findings of the state trial court without a hearing.[2]

Respondent argues in the Motion for Summary Judgment that no relief is available to Ayala in this proceeding because the state courts either properly rejected the claims on the merits or the claims were procedurally barred from review under state law.

**IV.     Standard of Review**

---

[2] The state trial court found the allegations in the State's answer to be "correct".  *Ex Parte Ayala*, No. WR-68,790-01 at 60.  Consequently, the findings of the state trial court, upon which the Texas Court of Criminal Appeals relied when it denied Ayala's state application for writ of habeas corpus, can be found in the State's Answer.  *Id.* at 32-50.

6

**A.      § 2254(d)**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), when a claim presented in a federal habeas corpus proceeding has already been adjudicated on the merits in a state proceeding, federal review is limited.  28 U.S.C. § 2254(d) provides:

> (d)   An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"For purposes of 28 U.S.C. § 2254(d)(1), clearly established law as determined by [the Supreme] Court 'refers to the holdings, as opposed to the dicta, of th[e] Court's decisions as of the time of the relevant state-court decision.'"  *Yarborough v. Alvarado*, 541 U.S. 652, 660-61 (2004) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

"[A] decision by a state court is 'contrary to' [the United States Supreme Court's] clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent.'"  *Price v. Vincent*, 538 U.S. 634, 123 S. Ct. 1848, 1853 (2003) (quoting *Williams*, 529 U.S. at 405-406).  A state court decision involves an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from the Supreme Court's decision but unreasonably applies that principle to the facts of the prisoner's case."  *Williams*, 529 U.S. at 413.  But "'a federal

habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.  Rather, it is the habeas applicant's burden to show that the state court applied [that case] to the facts of his case in an objectively unreasonable manner.'" *Price*, 538 U.S. at 641 (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25, 123 S. Ct. 357 (2002)).

As for factual issues, "the AEDPA precludes federal habeas relief unless the state court's decision on the merits was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" 28 U.S.C. § 2254(d)(2) (2000).  In addition, the state court's factual determinations carry a presumption of correctness; to rebut them, the petitioner must present clear and convincing evidence to the contrary.  28 U.S.C. § 2254(e)(1) (2000).  *Smith v. Cockrell*, 311 F.3d 661, 667 (5th Cir. 2002), *cert. dism'd,* 124 S.Ct. 1652 (2004).

Under § 2254(d), once a federal constitutional claim has been adjudicated by a state court, a federal court cannot conduct an independent review of that claim in a federal habeas corpus proceeding.  Rather, it is for the federal court only to determine whether the state court's decision was contrary to or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States, and whether the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  *Woodford*, 534 U.S. at 27 ("The federal habeas scheme leaves primary responsibility with the state courts for these judgments and authorizes federal-court intervention only when a state-court decision is objectively unreasonable.").  Whether a federal habeas court would have, or could have, reached a conclusion contrary to that reached by the state court on an issue is not determinative.  In addition, the correctness of the state court's decision is not determinative.  As

instructed by the Supreme Court in *Wiggins v. Smith*, 539 U.S. 510, 123 S.Ct. 2527, 2535 (2003), "[i]n order for a federal court to find a state court's application of our precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. . . . The state court's application must have been 'objectively unreasonable.'" (citations omitted).  Moreover, it is the state court's ultimate decision that is to be reviewed for reasonableness, not its reasoning.  *Neal v. Puckett*, 286 F.3d 230, 244-46 (5th Cir. 2002), *cert. denied*, 537 U.S. 1104 (2003); *Pondexter v. Dretke*, 346 F.3d 142, 148-9 (5th Cir. 2003), *cert. denied*, 541 U.S. 1045 (2004).

### B.    State Law Procedural Bar

Federal courts are precluded from considering claims which were rejected by the last state court to have considered them on the basis of a state procedural default. *Coleman v. Thompson*, 501 U.S. 722, 730 (1991); *Harris v. Reed*, 489 U.S. 255, 263 (1989).  In order for a state court's rejection of a habeas claim to act as a procedural bar to review in a federal habeas proceeding, the state court must, in a plain statement, determine that its rejection of the claim rests on adequate and independent state procedural grounds. *Harris*, 489 U.S. at 261; *Michigan v. Long*, 463 U.S. 1032, 1042 (1983).  Once a state court has relied on a procedural default for rejecting a habeas claim, a federal court in a federal habeas proceeding cannot review such a claim unless the petitioner shows cause and prejudice associated with the default or shows that absent a review of the claim by a federal court a fundamental miscarriage of justice will result. *Coleman*, 501 U.S. at 750.  A fundamental miscarriage of justice occurs when a "'constitutional violation has probably resulted in the conviction of one who is actually innocent.'"  *Sawyer v. Whitley*, 945 F.2d 812, 816 (5th Cir.) (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)), *cert. granted*, 502 U.S. 965 (1991), *and aff'd*, 505 U.S. 333 (1992).

## V.   Discussion

### A.   Insufficient Evidence Claim

In his first claim, Ayala maintains that there is no evidence, or insufficient evidence, that he committed the offense of murder.  In addition, Ayala complains that there is no evidence that the offense occurred in Brazoria County, the jurisdiction in which he was charged and convicted.

The Texas Court of Appeals rejected this claim when it affirmed Ayala's conviction.  In so doing, the Court of Appeals wrote:

> In his third issue, Ayala contends the evidence is legally insufficient to support his murder conviction because the circumstantial evidence fails to demonstrate that Ayala fired the shot that killed Martinez.
>
> *Standard of Review*
>
> When evaluating the legal sufficiency of the evidence, we view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789 (1979); *Drichas v. State*, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005).  The standard is the same for both direct and circumstantial evidence cases.  *Kutzner v. State*, 994 S.W.2d 180, 184 (Tex. Crim. App. 1999).  We do not resolve any conflict of fact, weigh any evidence, or evaluate the credibility of any witnesses, as this is the function of the trier of fact. *See Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999); *Adelman v. State*, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992); *Matson v. State*, 819 S.W.2d 839, 843 (Tex. Crim. App. 1991).  Instead, our duty is to determine whether both the explicit and implicit findings of the trier of fact are rational by viewing all the evidence admitted at trial in the light most favorable to the verdict.  *Adelman*, 828 S.W.2d at 421-22.  In so doing, any inconsistencies in the evidence are resolved in favor of the verdict.  *Matson*, 819 S.W.2d at 843.  In circumstantial evidence cases such as this, it is unnecessary for every fact to point directly and independently to appellant's guilt; it is enough if the combined and cumulative force of all the incriminating circumstances warrants the conclusion.  *See Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App.  1993); *Russell v. State*, 665 S.W.2d 771, 776 (Tex. Crim. App. 1983).
>
> *Analysis*

10

A person commits the offense of murder if he "intentionally or knowingly causes the death of an individual" or he "intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual." TEX. PEN. CODE ANN. § 19.02(b)(1) - (2) (Vernon 2003).

Ayala contends this case is similar to *Clayton v. State*, in which the Corpus Christi Court of Appeals found evidence legally insufficient to sustain a murder conviction where the evidence failed to demonstrate that the appellant fired the bullet that killed the victim. 163 S.W.3d 254, 258 (Tex. App.–Corpus Christi 2005, pet. granted). This case is distinguishable from *Clayton*, however, because in *Clayton*, there was no evidence of motive or of appellant's presence at the scene before the commission of the crime. In *Clayton*, the victim was discovered shot multiple times, lying in a field next to a wrecked car full of blood. *Id.* at 256. Appellant's transfer fingerprints, where appellant had touched the victim's blood and then touched the car, were discovered on the steering wheel and on the gearshift. *Id.* The State provided no motive, and appellant testified that he had arrived after the incident, attempted to drive the victim in the wrecked car to get help, and was frightened away by an oncoming truck, which crashed in a ditch near the scene. *Id.* at 256-57.

Here, Morelos testified that, on the evening of the incident, he saw Martinez and Ayala together at his parents' house, and subsequently received phone calls from Ayala's phone, from both Ayala and Martinez, asking him to come drinking with them. More importantly, Morelos testified that Ayala showed up at his house early the next morning asking to use Morelos' garage to clean his truck because someone had shot Martinez and left him in a ditch. Morelos also testified that, in the past, Martinez, a middle-aged man, had made inappropriate comments about Ayala's teenage sister while he was drunk that had made Ayala angry. Thus, the State in this case presented evidence both that Ayala was with Martinez prior to the incident, and that he had a potential motive for murdering him. In addition, the State presented evidence that police officers discovered Martinez's blood in Ayala's truck and on the jacket Ayala claimed to have worn the evening of the murder. The same jacket was muddy, as were the shoes Ayala claims to have worn that evening. Police officers discovered Ayala's cellular phone next to Martinez's body, which was lying in a ditch and covered with pulled grass. Police discovered hollow point bullets and ammunition in Ayala's apartment consistent with the bullet removed from Martinez's body. Viewed in a light most favorable to the verdict, we conclude that this evidence is legally sufficient to sustain Ayala's conviction.

*Ayala v. State,* No. 01-05-00714-CR, at 18-22. The Texas Court of Criminal Appeals likewise rejected the sufficiency of the evidence claim when it refused Ayala's petition for discretionary review. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) ("Where there has been one reasoned

state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground").

The Texas Courts' rejection of Ayala's insufficient evidence claim is not contrary to or unreasonable application of clearly established Federal law, as determined by the Supreme Court. A legal sufficiency claim presents a mixed question of law and fact and is governed by the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 325 (1979). Under that standard, a petitioner must prove that no rational trier of fact could have found the existence of facts necessary to establish the offense beyond a reasonable doubt. *Id.* at 325-26. In applying the standard, all evidence is viewed in the light most favorable to the prosecution, *id.* at 319; *Bujol v. Cain*, 713 F.2d 112, 115 (5th Cir. 1983), *cert. denied*, 464 U.S. 1049 (1984), and all credibility choices and conflicts in the evidence are resolved in favor of the verdict. *United States v. Graves*, 669 F.2d 964, 969 (5th Cir. 1982).          Here, taking the evidence recited by the Texas Court of Appeals in connection with Ayala's direct appeal in a light most favorable to the prosecution, and the evidence in the record that the victim's body was found in Brazoria County, a rational jury could have found the existence of facts necessary to establish the offense of murder beyond a reasonable doubt. Accordingly, based on the Texas courts' rejection of Ayala's insufficient evidence claim, no relief is available to Ayala in this proceeding under § 2254(d).

**B.      Inability to Present a Defense/Denial of Motion for Continuance Claims**

In his next two inter-related claims, Ayala complains that he was unable to present a defense because the State did not timely provide him with potentially favorable DNA evidence, and the trial court denied his motion for a continuance so that he could investigate the DNA evidence. The Texas courts rejected these claims in Ayala's direct appeal because Ayala had not preserved the claims for

review.  In rejecting the claims on state law procedural grounds, the Texas Court of Appeals wrote:

> In his second issue, Ayala contends the trial court abused its discretion by denying his motion for continuance because it denied him effective assistance of counsel.  Specifically, Ayala contends that although he was allowed to test the victim's DNA found on his shoes, he was not given sufficient time to test other DNA evidence that the State discovered on his shoes, which he contends could potentially have been exculpatory.  The State responds that Ayala has failed to preserve error on this issue.  We agree.

> Article 29.03 of the Texas Code of Criminal Procedure requires that a motion for continuance be in writing, and sworn to by a person having personal knowledge of the facts relied on for the continuance.  *See* TEX. CODE CRIM. PROC. ANN. art. 29.03 (Vernon 1989).  Moreover, the Texas Court of Criminal Appeals has held that "[a] motion for continuance not in writing and not sworn preserves nothing for review."  *Dewberry v. State*, 4 S.W.3d 735, 755 (Tex. Crim. App. 1999).  Here, Ayala presented two unsworn motions for continuance, and has therefore failed to preserve error with respect to the motions on appeal.  *Id.*

> Even if we construe this issue as a complaint that Ayala was denied effective assistance of counsel because his attorney failed to file a sworn motion for continuance, we do not believe that Ayala has satisfied the second prong of *Strickland*.  *Strickland v. Washington*, 466 U.S. 668, 687-88, 694, 104 S.Ct. 2052, 2064, 2068 (1984).  To show ineffective assistance of counsel, a defendant must demonstrate both (1) that his counsel's performance fell below an objective standard of reasonableness, and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  *Id.* at 687-88, 694, 104 S.Ct. at 2064, 2068; *Andrews v. State*, 159 S.W.3d 98, 101 (Tex. Crim. App. 2005).  A defendant has the burden to establish both of these prongs by a preponderance of the evidence, and a failure to make either showing defeats his ineffectiveness claim.  *Andrews*, 159 S.W.3d at 101; *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002).  We presume that counsel's conduct falls within the wide range of reasonable professional assistance, and we will find counsel's performance deficient only if the conduct is so outrageous that no competent attorney would have engaged in it.  *Andrews,* 159 S.W.3d at 101.  We cannot speculate beyond the record provided, so any allegation of ineffectiveness must be firmly founded in the record, and the record affirmatively must demonstrate the alleged ineffectiveness.  *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

> A trial court's decision to grant or deny a motion for continuance is discretionary.  *Heiselbetz v. State*, 906 S.W.2d 500, 511 (Tex. Crim. App. 1995).  To find an abuse of discretion in refusing to grant a motion for continuance, there must be a showing that the defendant was prejudiced by his counsel's inadequate preparation time.  *Id.*  Here, Ayala contends that he was prejudiced because although

he was allowed to test the victim's DNA found on his shoes, he was not given sufficient time to test other DNA evidence that the State discovered on his shoes, which he contends could potentially have been exculpatory.

If a third party actually committed the murder in this case and somehow left DNA on Ayala's own shoes during the crime, then Ayala should know of his identity and could have subpoenaed him for trial. *See Perez v. State*, 5 S.W.3d 398, 400-01 (Tex. App.–Houston [14th Dist.] 1999, no pet.) (holding appellant did not satisfy *Strickland* test when appellant demonstrated a complete lack of diligence by failing to timely disclose factual information to trial counsel). Ayala has also failed to demonstrate how the existence of the third party's DNA on his shoes could overcome the evidence against him. Ayala has thus not shown that a reasonable probability exists that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *See Andrews*, 159 S.W.3d at 101. Accordingly, we hold that Ayala was not denied effective assistance of counsel.

*Ayala v. State*, No. 01-05-00714-CR, at 22-25. These same claims regarding his ability to present a defense and the denial of his motion for continuance were also rejected on state law procedural grounds by the Texas courts in connection with Ayala's state application for writ of habeas corpus. *Ex parte Ayala*, No. WR-68,790-01 at 46 ("These claims were disposed of on Appeal [and] are not cognizable by way of a writ.").

Given the state courts' clear rejection of these claims on state law procedural grounds, as well as Ayala's failure to either establish cause and prejudice to overcome the procedural default or make a showing of actual innocence, these claims are procedurally barred from review in this § 2254 proceeding.

## C.    State/Prosecutorial Misconduct

In his next claim, Ayala maintains that the State engaged in misconduct when threats were used to obtain the inculpatory statement of Ayala's brother, Morelos, and when officers searched Ayala's vehicle and residence without his consent and without a warrant. In addition, Ayala maintains that the prosecutor engaged in misconduct when he introduced a weapon into evidence that was not

the murder weapon, introduced evidence of a footprint found near Martinez' body but did not connect that footprint to Ayala, and failed to compare the mud found on Ayala's jacket with the mud at the scene.  The state courts rejected the claims of an illegal search in Ayala's direct appeal, and rejected the other prosecutorial misconduct claims in Ayala's state application for writ of habeas corpus.  None of the state courts' rulings on those misconduct claims is contrary to or an unreasonable application of clearly established Federal law as determined by the Supreme Court, nor were any of the rulings based on an unreasonable determination of the facts in light of the evidence presented.

Ayala's complaints about the search of his vehicle and his residence are complaints that are not reviewable in this § 2254 proceeding.  *Stone v. Powell*, 428 U.S. 465, 494 (1976) ("[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.").  In addition, Ayala's claim that the State threatened his brother to obtain his statement does not state a constitutional violation.  Ayala has not, as found by the state courts, identified the substance of any alleged threats made to his brother to secure his statement, and there is no allegation or evidence that Morelos committed perjury.

As for Ayala's complaints about the admission of certain evidence at trial, habeas relief is generally not available to correct state law evidentiary errors.  Relief is, however, available if the evidentiary error also violates a defendant's federal constitutional right or renders the defendant's trial fundamentally unfair.  *Wilkerson v. Cain*, 233 F.3d 886, 890 (5th Cir. 2000); *Johnson v. Puckett*, 176 F.3d 809, 820 (5th Cir. 1999) ("A state court's evidentiary rulings present cognizable habeas claims

only if they run afoul of a specific constitutional right or render the petitioner's trial fundamentally unfair."). Here, because Ayala has made no showing that the evidence he complains was improperly admitted rendered his trial fundamentally unfair, and because the state courts found that the weapon and the footprint were relevant and admissible, and that the State was not required to test the mud on Ayala's jacket, *see Ex Parte Ayala*, No. WR-68,790-01 at 49, the state courts' rejection of these claims was not contrary to or an unreasonable application of clearly established Federal law, nor was it based on an unreasonable determination of the facts in light of the evidence. Accordingly, no relief is available under § 2254(d) on Ayala's State and prosecutorial misconduct claims.

### D.     Jury claims

In his next claims, Ayala complains that the trial court erred in its refusal to strike a venireperson for cause, and in its refusal to quash the jury panel as not being made up of a fair cross section of the community. Ayala raised these claims in his state application for writ of habeas corpus, and they were rejected on state law procedural grounds. In particular, the Texas Court of Criminal Appeals determined that the claims should have been raised on direct appeal and, because they were not, they were procedurally barred from review in the state habeas proceeding. *Ex Parte Ayala*, No. WR-68,790-01 at 48.

Given the state courts' rejection of Ayala's two jury composition claims on state law procedural grounds, as well as Ayala's failure to show either cause and prejudice for his procedural errors, or that he is actually innocent, these claims are procedurally barred from review in this § 2254 proceeding.

### E.     Ineffective assistance of appellate counsel claim

In his final claim, Ayala contends that his appellate counsel was ineffective for failing to raise

all of the claims alleged herein in both his direct appeal and in a petition for discretionary review.

Ayala's appellate counsel did raise claims on appeal challenging the sufficiency of the evidence (claim 1), his inability to present a defense (claim 2), and the trial court's denial of his motion for continuance (claim 3). With respect to these claims, Ayala has not identified or articulated what more appellate counsel could have done. As for the claims that were not raised on appeal – the State and prosecutorial misconduct claim (claim 4), and the jury claims (claims 5 & 6), because Ayala did not show in the state habeas proceeding, and has made no showing herein, that the result of his appeal would have been different if those claims had been raised, the Texas courts' rejection on this ineffective assistance of appellate counsel claim is not contrary to or an unreasonable application of clearly established Federal law as determined by the Supreme Court.

Ineffective assistance of counsel claims are generally measured by reference to the clearly established federal law set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, to be entitled to relief on an ineffective assistance of counsel claim, a petitioner must be able to show that his counsel was deficient and that the deficiency prejudiced him to the extent that a fair trial could not be had. *Id*. at 687. Deficiency is judged by an objective reasonableness standard, with great deference given to counsel and a presumption that the disputed conduct is reasonable. *Id*. at 687-689. The prejudice element requires a petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. A petitioner has the burden to prove both the deficiency and the prejudice prongs in order to be entitled to relief. *United States v. Chavez*, 193 F.3d 375, 378 (5th Cir. 1999).

Claims of ineffective assistance of appellate counsel are generally assessed under the two part *Strickland* deficiency and prejudice standard as claims of ineffective assistance of trial counsel. *Williams v. Collins*, 16 F.3d 626, 635 (5th Cir.), *cert. denied*, 512 U.S. 1289 (1994).  With respect to *Strickland's* deficiency prong, "[o]n appeal, effective assistance of counsel does not mean counsel who will raise every nonfrivolous ground of appeal available." *Green v. Johnson*, 160 F.3d 1029, 1043 (5th Cir. 1998), *cert. denied*, 525 U.S. 1174 (1999); *see also Ellis v. Lynaugh*, 873 F.2d 830, 840 (5th Cir.) ("The Constitution does not require appellate counsel to raise every nonfrivolous ground that might be pressed on appeal."), *cert. denied*, 493 U.S. 970 (1989).  Rather, "[a]ppellate counsel is obligated to only raise and brief those issues that are believed to have the best chance of success." *Rose*, 141 F.Supp.2d at 704-705.  "[O]nly when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1985) (cited with approval in *Smith v. Robbins*, 528 U.S. 259, 288 (2000)).  As for *Strickland's* prejudice prong, "[p]rejudice results if the attorney's deficient performance would likely render either the defendant's trial fundamentally unfair or the conviction and sentence unreliable." *United States v. Dovalina*, 262 F.3d 472, 474 (5th Cir. 2001).

Here, because Ayala has made no showing that the claims appellate counsel did not raise on direct appeal were clearly and obviously stronger that those that were, and because there is no reasonable probability that the result of the appeal would have been different if all the claims alleged in this § 2254 proceeding had been raised on direct appeal, the Texas courts' rejection of this ineffectiveness claim is not contrary to or an unreasonable application of *Strickland* and its progeny. Accordingly, no relief is available, under § 2254(d), on this claim.

VI.     **Conclusion and Order**

Based on the foregoing and the conclusion that Ayala is either entitled to no relief in this proceeding under § 2254(d) or his claims are procedurally barred, the Court

ORDERS that Respondent's Motion for Summary Judgment (Document No. 8) is GRANTED, Petitioner's Federal Application for Writ of habeas Corpus (Document No. 1) is DENIED, and this § 2254 proceeding is DISMISSED WITH PREJUDICE.  It is further

ORDERED that a Certificate of Appealability is DENIED.  A certificate of appealability from a habeas corpus proceeding will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This standard "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotations and citations omitted).  Where the claims have been dismissed on the merits, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* at 484; *Beasley v. Johnson*, 242 F.3d 248, 263 (5th Cir.), *cert. denied*, 122 S.Ct. 329 (2001).  When the claims have been dismissed on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

Given the claims raised herein, as well as the rejection of Petitioner's claims by the Texas courts, the Court determines that reasonable jurists would not find the assessment of Petitioner's constitutional claims to be debatable or wrong and would not find debatable the correctness of the

procedural rulings made herein. Therefore, Petitioner has not made a substantial showing of the denial of a constitutional right, and a Certificate of Appealability will not issue.

Signed at Houston, Texas, this 19th day of February, 2009.


Frances H. Stacy
United States Magistrate Judge